**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| Ronald Collin M., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.  2:25-cv-00126-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff Ronald Collin M.'s Petition for Review (Dkt. 1) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.   ADMINISTRATIVE PROCEEDINGS

On April 27, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income.  Both applications alleged disability beginning December 4, 2019.  These claims were denied on December 10, 2022, and again upon reconsideration on May 10, 2023.  Plaintiff then requested a hearing before an administrative law judge (ALJ) on June 2, 2023.  On May 21, 2024, ALJ Jesse Shumway held a hearing in Spokane, Washington.  Plaintiff appeared and testified at the hearing.  Also present at the hearing was Thomas A. Polsin, an impartial vocational expert.

On June 10, 2024, ALJ Shumway issued a decision denying Plaintiff's claim, finding that Plaintiff was not disabled within the meaning of the Social Security Act from December 4, 2019

through the date of the decision.  At that point, Plaintiff requested review from the

Appeals Council.  On January 10, 2025, the Appeals Council denied the request for

review, making the ALJ's decision the final decision of the Commissioner of Social

Security.

Having exhausted his administrative remedies, Plaintiff brings this action.  He

alleges a single point of error: that the ALJ improperly determined his RFC by failing to

incorporate deficits in concentration, persistence, and pace that the ALJ noted elsewhere.

Pl.'s Br. at 2.

## II.  **<u>STANDARD OF REVIEW</u>**

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide

whether it contains evidence that would allow a person of a reasonable mind to accept the

conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004). An ALJ's error is harmless and should not be reversed when that error is inconsequential to the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Ludwig*, 681 F.3d at 1054.

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  ANALYSIS

**A.    The Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is

work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Plaintiff had not engaged in SGA since December 4, 2019, the alleged onset date.  AR 23.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff had the following severe medically determinable impairments: "lumbar degenerative disc disease, depressive disorder, post-traumatic stress disorder (PTSD), anxiety disorder, attention- deficit/hyperactivity disorder (ADHD), personality disorder and cannabis use disorder."  AR 24.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met the criteria of any listed impairment. AR 25.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, as to Plaintiff's RFC, the ALJ concluded:

> The claimant has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can occasionally stoop, kneel, crouch, and crawl and frequently perform all other postural activities; he cannot have concentrated exposure to hazards (e.g., unprotected heights, moving mechanical parts); he can have no contact with the public, and only occasional, superficial interaction with co-workers and supervisors; and he requires a routine, predictable work environment with no more than occasional, simple changes.

AR 26. While the ALJ found Plaintiff retained a RFC for a range of light work, there was no past relevant work that Plaintiff could perform. AR 33. Thus, the ALJ resolved this step in Plaintiff's favor. *Id.*

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled. Here, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, significant numbers of jobs that Plaintiff could perform existed in the national economy. In particular, the ALJ credited the vocational expert's testimony that Plaintiff could work as a production solderer, small products assembler, and routing clerk. AR 34. Based on these findings, the ALJ concluded that Plaintiff had not been under a disability from December 4, 2019, through the date of the decision. *Id.*

**B.     Discussion**

1.     The ALJ Properly Incorporated Concentration, Persistence, and Pace Deficits into the RFC

Plaintiff's primary argument on appeal is that the ALJ erred by formulating an RFC that did not reflect the ALJ's own findings about Plaintiff's deficits in concentration, persistence, and pace. Pl.'s Br. at 4. Plaintiff notes that the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, and maintaining pace. *Id.* at 13. However, Plaintiff asserts that the ALJ's RFC did not include any relevant limitations, nor explain why they were omitted. *Id.* at 15. Defendant responds that the ALJ clearly intended to include a "simple routine tasks" limitation in Plaintiff's RFC, but did not do so due to a scrivener's error. Def.'s Br. at 2-3. Defendant contends the ALJ's failure to include the "simple routine tasks" limitation in the text of the decision is

harmless error, because the ALJ included that limitation in a hypothetical posed to a vocational expert at Plaintiff's disability hearing and incorporated it into the ALJ's step five analysis. *Id.* at 3-4.  Defendant argues that – with this limitation effectively included – the ALJ's RFC adequately accounts for Plaintiff's limitations in concentration, persistence, and pace. *Id.* at 3. Accordingly, Defendant argues this Court should affirm the ALJ's decision.  The Court agrees.

> a.    *Legal Standard*

"A claimant's RFC is what a claimant can still do despite h[er] limitations." *Moriarty v. Colvin*, Case No. CV 14-6909 RNB, 2015 WL 4397913, at *1 (C.D. Cal. July 17, 2015) (citing *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996)).  The ALJ bears the responsibility of "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record." *Mendoza v. Kijakazi*, Case No. 1:19-cv-1371-HBK, 2022 WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)). An ALJ's RFC findings must be consistent with, but not identical to, the credible and properly supported limitations on the record. *Id.*  (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

An RFC determination limiting a claimant to "simple, repetitive tasks" adequately captures limitations in concentration, persistence, or pace where the determination is consistent with the restrictions identified in the medical evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *see also Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017).

b.      *The ALJ's Decision*

At step three of the sequential process, the ALJ concluded that Plaintiff had a moderate limitation in concentrating, persisting or maintaining pace.  AR 25.  The ALJ noted that Plaintiff's consultative examination findings showed "signs of difficulty" with some mental tests, but that he often demonstrated signs of normal attention span and concentration.  AR 25-26.

Then, in determining Plaintiff's RFC, the ALJ considered relevant medical opinions about Plaintiff's limitations.  These included opinions by two state agency mental consultants – Jasdeep Gill, M.D., and Mach Stephon, Psy.D. – that suggested Plaintiff "may struggle with pace at times and sustained concentration but is at least capable of very simple and repetitive tasks. . . he may have some issues with adapting to change and motivation to do so but would at least be capable of very simple, repetitive work activity."  AR 31.  The ALJ found these opinions persuasive.  *Id.*

The ALJ also considered an opinion by Gerald Gardner, Ph.D., a consultative examiner in psychology.  Dr. Gardner opined that Plaintiff:

> [W]ould appear to be able to understand and remember simple instructions and procedures and to learn a modest amount of detail with repetition, but not higher levels of detail or complexity; attention appeared to be intact for less demanding mental control tasks but his description of relatively low level of activity, suggests that depressive symptoms may significantly hamper his ability to sustain competitive pace over a full day and week; he appears likely able to carry out low demand, superficial task related social interactions and his hypervigilance and social anxiety would contribute to significant avoidance of social/work situations; his judgment appears intact for more concrete task related matters; and his marijuana use would seem likely to interfere with motivation and ability to sustain a schedule.

AR 32.  The ALJ found this opinion to be "largely persuasive."  *Id.*  However, the ALJ found Dr. Gardner's "opinion that the claimant's depressive symptoms may significantly hamper his ability to sustain competitive pace. . . is not persuasive, as it is not consistent with his longitudinal treatment record documenting noted improvement with treatment over time. . . based on patient health questionnaires describing mild to moderate symptoms."  *Id.*

The ALJ's written RFC did not include any limitation to "simple, routine tasks."  AR 26. However, it did include other limitations, including that he could have no contact with the public, only occasional, superficial interaction with co-workers and supervisors, and that he required a routine, predictable work environment with no more than occasional, simple changes.  AR 26. Despite the omission of a limitation to "simple, routine tasks," the ALJ posed a single hypothetical to the vocational expert at Plaintiff's disability hearing:

> I'd like you to consider a hypothetical individual of [Plaintiff's] age, educational background, and work history who is capable of a full range of light work with the following exceptions.  The individual can occasionally stoop, kneel, crouch, and crawl.  Can frequently perform all the other postural activities.  Cannot have concentrated exposure to hazards such as unprotected heights and moving mechanical parts.  *Is limited to simple, routine tasks*.  Can have no contact with the public, and only occasional superficial interaction with coworkers and supervisors.  And the individual needs a routine, predictable work environment with no more than occasional simple changes.

AR 54 (emphasis added).  Thus, the ALJ's hypothetical to the vocational expert included a "simple, routine tasks" limitation.  The ALJ subsequently relied on the vocational expert's testimony responding to this hypothetical in concluding that Plaintiff could perform work in the national economy.  AR 34.

With this background in mind, the Court considers (i) whether the omission of this "simple, routine tasks" limitation in the written decision was a harmless error, and (ii) whether

the limitations in Plaintiff's RFC adequately accounted for the ALJ's earlier finding that Plaintiff had a moderate limitation in concentration, persistence, and pace.

> i.  <u>The Omission of a "Simple, Routine Tasks" Limitation Was Harmless Error</u>

Plaintiff's opening brief argues that the ALJ's RFC determination did not provide concentration, persistence, and pace-related limitations, nor explain their absence.  Pl.'s Br. at 15.  However, Plaintiff concedes that the ALJ's hypothetical to the vocational expert included a "simple, routine tasks" limitation.  *Id.* at 14 n.10.  Defendant responds that the "simple, routine tasks" limitation was omitted due to a scrivener's error.  Def.'s Br. at 4.  In addition, because the ALJ's subsequent analysis relied on the "simple, routine tasks" limitation provided to the vocational expert at the hearing, Defendant asserts any error here is harmless.  Def.'s Br. at 4.  Although Plaintiff acknowledges this limitation was present in the hypothetical, neither his brief nor his Reply appears to explicitly assert that its omission from the written decision was harmful.  *See* Reply at 2-4.

The ALJ undoubtedly omitted an explicit "simple, routine tasks" limitation from the written RFC.  However, the record makes clear that the ALJ intended to include a "simple, routine tasks" limitation that addressed Plaintiff's CPP limitations.

Two aspects of the record support this conclusion.  First, the ALJ found persuasive prior administrative medical findings from state agency medical consultants (Gill and Stephon) that explicitly included a "simple and repetitive tasks" limitation.  AR 32.  Second, the ALJ included a "simple, routine tasks" limitation in the single hypothetical posed to the vocational expert.  AR 54.

Based on the single hypothetical posed to the vocational expert – in which that expert necessarily considered the "simple, routine tasks" limitation – the expert testified that Plaintiff could perform over 425,000 jobs in the national economy.  AR 54.  The ALJ relied on this testimony to conclude that Plaintiff was not disabled.  AR 34.

Thus, the failure to explicitly include the "simple, routine tasks" limitation in Plaintiff's written RFC was harmless error, because this limitation was effectively included in Plaintiff's RFC in subsequent stages of the sequential process.  Were this Court to remand and direct the ALJ to correct this omission by inserting the relevant language into Plaintiff's written RFC, the outcome would be the same.  Because the vocational expert considered that language as part of Plaintiff's RFC when testifying at Plaintiff's hearing, the ALJ would be able to rely on the exact same testimony to determine that a claimant with Plaintiff's RFC could perform work existing in significant numbers in the national economy.  Accordingly, the grounds and subsequent outcome of the ALJ's decision would not change, and the error here is harmless.  *Molina*, 674 F.3d at 1115.

In sum, the Court considers the ALJ's RFC to effectively include the "simple, routine tasks" limitation, and proceeds to analyze whether that RFC was free of legal error and supported by substantial evidence.

### ii.  The RFC Adequately Accounted for Plaintiff's Limitations

Plaintiff argues that even if the "simple, routine tasks" limitation had explicitly been included in the RFC, the RFC would not have sufficiently addressed the moderate CPP limitations the ALJ had found earlier.  Reply at 2-4.  The Court disagrees.

Precedent suggests that an ALJ does not err by accounting for a claimant's deficits in concentration, persistence, and pace with a "simple and routine tasks" limitation.  In *Stubbs-*

*Danielson*, the plaintiff argued that the ALJ's RFC finding that she "retain[ed] the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public" did not adequately capture mental limitations identified by two doctors that were "related to pace and. . . attention, concentration, and adaptation." 539 F.3d at 1173-74. The Ninth Circuit concluded the ALJ's RFC finding properly incorporated the limitations identified by the doctors. *Id.* at 1174. It remarked that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* Because the medical opinions were entirely consistent with the plaintiff's ability to do simple work, the Ninth Circuit affirmed the ALJ's decision. *Id.* Plaintiff pursues the same argument that the *Stubbs-Danielson* court rejected. Here, the ALJ's RFC – read to include the "simple, routine tasks" limitation omitted due to a scrivener's error – was fully consistent with the restrictions identified in the medical opinions. Each medical opinion relating to Plaintiff's mental limitations indicated that Plaintiff could perform simple, routine work. Drs. Gill and Stephon opined Plaintiff "would at least be capable of very simple, repetitive work activity." AR 31. This limitation was also consistent with Dr. Gardner's opinion, which concluded Plaintiff could "understand and remember…simple instructions and procedures," and his attention appeared to be intact for less demanding tasks. AR 32. The only portion of Dr. Gardner's opinion that arguably conflicted with a "simple and routine tasks" limitation – his finding that depressive symptoms might significantly hamper Plaintiff's ability to sustain competitive pace over a full day and week – was discounted by the ALJ as "not persuasive." *Id.* It was the ALJ's duty to resolve conflicts in the medical testimony, and

Plaintiff does not challenge the ALJ's evaluation of Dr. Gardner's opinion here.  *Treichler*, 775 F.3d at 1098; Pl.'s Br. at 12-16.  Accordingly, the "simple and routine tasks" limitation was consistent with the credible and properly supported limitations on the record before the ALJ, and substantial evidence supports the ALJ's RFC.

Moreover, as Defendant points out, other mental limitations in Plaintiff's RFC also plausibly addressed his deficit in concentration, persistence, and pace.  Def.'s Br. at 5.  The ALJ found Plaintiff "could have no contact with the public," and required a "routine, predictable work environment with no more than occasional, simple changes."  AR 26.  These limitations also reasonably addressed Plaintiff's CPP deficits and were consistent with the conclusions of Dr. Gill, Dr. Stephon, and Dr. Gardner that he had "issues with adapting to change" and could not tolerate "higher levels of detail or complexity."  AR 31-32.  Plaintiff does not address this portion of the ALJ's RFC in his briefing.  Considered alongside the "simple, routine tasks" limitation, this language bolsters the conclusion that the ALJ here meaningfully engaged with Plaintiff's CPP limitation and formulated an RFC that accounted for its impact on his work.

Acknowledging *Stubbs-Danielson*, Plaintiff candidly concedes that he does not mean to argue for a "categorical requirement" that every ALJ in every case where moderate limitations are found must include a limitation more restrictive than those at issue here.  Pl.'s Br. at 14.  Instead, he points to a raft of evidence supporting such deficits, including Plaintiff's own statements, and argues that the ALJ was required to engage with this evidence in greater detail.  *Id.* at 14-15.  However, as explained above, the ALJ's RFC determination is supported by substantial evidence.  With that in mind, this portion of Plaintiff's argument essentially asserts (i) the ALJ did not draw the conclusions Plaintiff wishes he would have from the record, and (ii) the ALJ was not exhaustive enough in his analysis.  These are not winning avenues in a Social

Security appeal.  Because substantial evidence supports the ALJ's conclusion, this Court will not substitute its own interpretation of the record on appeal.  *Batson*, 359 F.3d at 1196.  Similarly, mindful that an ALJ must translate an extensive record into a succinct RFC, the Court will not demand more than the ALJ's already adequate analysis.  *Rounds*, 807 F.3d at 1006.

In sum, the ALJ's RFC is supported by substantial evidence because it was consistent with limitations properly supported in the record.  Remand is not warranted on this issue.

> 2.    The ALJ Properly Evaluated Plaintiff's Subjective Symptom Complaints

Plaintiff also briefly argues that the ALJ insufficiently explained his decision to discredit Plaintiff's subjective symptom reports.  *Id.* at 15-16.  He argues the ALJ improperly looked to his reported daily activities and otherwise generally failed to provide clear and convincing evidence to discredit his statements.  Pl.'s Br. at 15-16.  Defendant responds that the ALJ validly looked to evidence of malingering to discredit Plaintiff's reports, while also providing other legitimate reasons to discount Plaintiff's subjective symptoms.  Def.'s Br. at 7-9.  The Court agrees with Defendant that remand is not warranted on this issue.

> a.    *Legal Standard*

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

(9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not suffice. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony …." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). In other words, "the 'clear and convincing' standard requires an ALJ to show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017). Inadequate or inconsistent objective medical evidence may be used to discount a claimant's testimony. *Smartt*, 53 F.4th at 498. Similarly, daily activities that are inconsistent with a claimant's symptom allegations are also valid grounds to discount that testimony. *Ghanim v. Colvin*, 763

F.3d 1154, 1165 (9th Cir. 2014).  In short, it is solely within the ALJ's province to assess the credibility of the claimant's testimony.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Having heard the testimony, the ALJ is in the best position to make credibility determinations, and their determinations are entitled to great weight.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair*, 885 F.2d at 603.  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

On appeal, the district court's role is to review, not redo, this work.  If the ALJ's rationale for rejecting a plaintiff's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not.  *Smartt*, 53 F.4th at 499.

  b.  *The ALJ's Decision*

In formulating Plaintiff's RFC, the ALJ considered the claimant's reported symptoms.  AR 27.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  *Id.*  However, the ALJ found Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record."  *Id.*  Specifically, the ALJ concluded that the "objective medical evidence, pattern of past recorded statements, course of treatment, evidence of malingering, activities of daily living, and work history" undermined Plaintiff's allegations about his symptoms' intensity, persistence, and limiting effects.  AR 30.

In discounting Plaintiff's reported symptoms, the ALJ first analyzed objective medical evidence in the record, noting it was "unremarkable and inconsistent with the claimant's disability allegations." AR 30. The ALJ noted Plaintiff's lumbar MRI results, which displayed only mild to moderate abnormalities; unremarkable physical exam findings; and mental examinations reflecting mostly normal findings and only "modest deficits." *Id.* The ALJ also found that Plaintiff's pattern of past recorded statements, which were generally positive about his mental health outlook, was also inconsistent with his reported symptoms. *Id.*

The ALJ also considered Plaintiff's course of treatment, noting that it showed no regular mental health counseling, little treatment for physical impairments, and psychiatric medication management by a nurse practitioner, not a psychiatrist. *Id.* The ALJ deemed this treatment record "routine and conservative, and not indicative of disability." *Id.*

The ALJ next discussed Plaintiff's reported daily activities, noting that they reflected a "high level of independent functioning." *Id.* For example, the record showed that Plaintiff could perform form household tasks, shop, prepare meals, and go out. AR 30-31.

The ALJ concluded the subjective symptoms analysis by highlighting "affirmative evidence of malingering in the record." AR 31. Plaintiff's mental assessments found that he exaggerated and displayed "effort[s] to portray himself as more impaired than he may really be." *Id.* On this topic, the ALJ also looked to Plaintiff's "fairly weak work history extending years before the alleged onset date…this pattern suggests the absence of a causal connection between the claimant's current impairments and his unemployment." *Id.*

Plaintiff's arguments on this issue are unavailing. For one, Plaintiff generally contends that the ALJ did not provide "clear and convincing" reasons for discrediting his subjective symptom statements. Pl.'s Br. at 15-16. However, the "clear and convincing" requirement

applies only where an ALJ determines that a claimant is not malingering. *Lingenfelter*, 504 F.3d at 1036. Thus, as Defendant correctly points out in its brief, an ALJ's rejection of subjective testimony in a case involving malingering need only be supported by clear and convincing reasoning as to the malingering itself. *Smartt*, 53 F.4th 497; Def.'s Br. at 7. Here, the ALJ specifically pointed to "affirmative evidence of malingering in the record," including examination findings demonstrating "negative impression management, i.e., an effort by the claimant to portray himself as more impaired than he may really be." AR 31. The ALJ also found that Plaintiff's weak work history suggested he could be misrepresenting the degree to which his current impairments had caused his unemployment. *Id.* In this way, the opinion adequately supported the ALJ's conclusion by identifying what evidence undermined Plaintiff's complaints, thereby providing clear and convincing grounds to discount those complaints. *Brown-Hunter*, 806 F.3d at 493.

Even setting aside the unique analysis involved in a case of malingering, the ALJ provided additional clear and convincing reasons to discredit Plaintiff's reported symptoms. Over a full page of single-spaced text, the ALJ provided six reasons to discredit those symptoms: inconsistency with objective medical evidence, inconsistency with Plaintiff's past reported statements, inconsistency with Plaintiff's course of treatment, evidence of malingering, inconsistency with reported daily activities, and inconsistency with Plaintiff's reported work history. AR 30-31. The ALJ explained in detail, with citations to record evidence, how each of these factors contradicted specific symptoms reported by Plaintiff. *Id.* The Court cannot agree with Plaintiff's assertion that this was a "conclusory and very minimal discussion." Pl.'s Br. at 15. Rather, the

Court finds the ALJ's treatment of Plaintiff's symptom testimony was clear and detailed enough to possess the "power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff's brief also contests the ALJ's usage of his daily activities to discredit his subjective symptoms. That argument is flawed for two reasons. First, daily activities are a valid ground to discredit a claimant's subjective symptom reports. *Ghanim*, 763 F.3d at 1165. Second, even if the ALJ's daily activities analysis was defective, it represented only one of the multiple grounds that the ALJ relied on to discredit Plaintiff's subjective statements. AR 30-31. Because Plaintiff's brief makes no challenge to any of these other grounds, the Court need not examine the ALJ's daily activities analysis in detail. *See Bray v. Comm'r of Sec. Sec. Admin.*, 553 F.3d 1219, 1226 n.7 (9th Cir. 2009) (arguments not made in opening brief are waived).

In sum, the ALJ provided multiple valid and specific grounds to discount Plaintiff's reported subjective symptoms. Taken together, these constitute clear and convincing reasons to for rejecting Plaintiff's claims about the extent and limiting impact of his impairments. Remand is not warranted on the issue.

## IV.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint for Review of a Social Security (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

DATED:  March 23, 2026

_____

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge